of America, arguments not to exceed 15 minutes per side. Mr. Buckner, for the appellants. I'm Tom Buckner, your honors. I represent Tripp and Holly Dargie. I wish to reserve three minutes for rebuttal. Very well. This is a tax code that is not in effect   today, so your honor, there are three issues. Is there a microphone up there for him? These are the new ones, right? Judge Schreinrich was asking if... Is there a mic? Oh, it's this thing. I'll try to speak closer. You could raise it up if you want. No, I'm sorry, the whole... Oh, this one doesn't? I'm sorry. If you could speak up just a little while. You don't need to... There are three issues in this income tax refund case, your honors. First issue is whether a damages payment by plaintiff Tripp Dargie, a physician, is deductible as an ordinary and necessary business expense under revenue code section 162. That's the first issue. Secondly, is this deduction disallowed under code section 265A1 because it is allocable to tax-exempt income? Okay, the first damage payment is $121,440. The tax-exempt income that Dr. Dargie received was $73,000, which was received six years before. It's essentially a loan, isn't it? Well... We loan it to you if you serve in this place, and if you don't serve, you have to pay it back. It's a contractual agreement. The agreement is... It's like a bank. Right, in two parts. It's a note. He owes it back. If he drops out of medical school and gets kicked out, okay, it's a note and there's interest. If, however, he finishes medical school and finishes residency but declines to serve for four years in Murfreesboro, Tennessee, then the contract says in a different section that he owes back twice, as liquidated damages, owes back twice the amounts paid by the Middle Tennessee Medical Center. So when he settled this obligation in 2002 because, well, for two reasons. Number one, the medical center in Murfreesboro really breached their agreement. They said they would provide him employment opportunities after his retirement. We don't... Things have changed. You're going to have to start your own solo medical practice at a cost of roughly $500,000. I didn't know it cost that much to start one up anymore. Well, you've got equipment, leasing. Things are expensive. So he said, well, I can't afford that. I've got a wife and two children. That's too much money. I'm going to go ahead and pay you off. Germantown, which is an upscale neighborhood of Memphis, right? That's right. He's an ER physician in Germantown. And he got a better salary in Germantown than he would have made in Murfreesboro as a sole practitioner. So he made a financial business decision in 2002 to pay $121,440 to be relieved from his service obligation to work for four years. And so on amended return, his accountants deducted that as a business expense where he could... Who loaned him the money in the first instance? It was the Middle Tennessee Medical Center in Murfreesboro signed a contract saying... Was the medical center itself that loaned the money? Yes. Well, it wasn't. They advanced the money. There was no note signed, no loan agreement. There was a services agreement. They said, we will pay your medical school tuition and other expenses if you agree to work. It was conflicting in the whereas. It said work as a staff member of the medical center. But in the agreement itself, it says work in the underserved area of Rutherford County. So there was no note signed. Now, what's confusing is the state of Tennessee, the UT Medical School, they treated it like a loan. In their records, they had interest accumulating because they thought, I assume, that if he leaves medical school, it is a loan. But he didn't leave. He finished, but he breached the agreement by not working for four years in Murfreesboro. And he paid this amount to get out of the agreement and deducted it, where he could make more money and pay more income tax in Germantown. He never did pay income tax on the income he got from the Murfreesboro organization. Apparently not. No one can find the income tax returns. That would be an odd thing, right? Yeah. The burden is on us to prove he did report that as income. And we can't do that. So we can see that he probably didn't report that as income. But the question under 265 is, that's in front of the code section, 265 applies to the cost of producing tax-exempt income. Okay, the payment was made in 2002. The tax-exempt income came in 1994. And so it was a business decision he made later. He didn't enter into this agreement in 94 with the idea completely. He wanted to get a job after graduation, after residency. So I guess it was twofold. One, they're going to pay his medical tuition. Two, they'd offer him a job. As it turned out, they didn't offer him a job. They said, you can start your own practice. What if they had offered him a job, but the job he took paid five times as much? And he says, well, I'm going to take that five times as much job. Does that change your argument? No. In Germantown, he obviously thought he could make more in Germantown than in Murfreesboro and pay more income tax. But presumably your argument, you keep saying they didn't offer him a job. Right. He could set up a practice, but they didn't offer him a job. I'm saying, suppose they did offer him a job, but Germantown was so much better that you'd be a fool not to take it. Does that change your argument? Well, in his deposition, he said if they'd offered him a job, he would have gone to Murfreesboro. It's what he said in his deposition. But he doesn't claim breach of contract here, does he? No, no, no. At this point, we can see there's no material issue of fact. It's just a question of law. Does 162 apply to get the deduction or does 265 apply to say, no, this is related or allocable to tax-exempt income? Then alternatively, we say, wait a minute. If you say 265 applies, at least he could deduct the difference between the 121,440 and the 73,000. The IRS says, no, you can't deduct any of it. Well, let's, I mean, we're kind of going to step two so far in the oral argument. I mean, what about the first step, whether this is deductible at all? I mean, the Supreme Court seems to think that or say that we look to the, quote, origin and character of the claim with respect to which an expense was incurred rather than its potential consequences upon the fortunes of the taxpayer. It said that in the Gilmore case. And so, you know, we look to the origin of this claim. Well, the origin of this claim is he wants to get an education, and so he takes on an obligation. Which he thereafter breaches. But the origin is he wants to get an education, not he wants to do something with an extant practice. And so doesn't that suggest that this is a personal expense, just like educational expenses are for everybody else? Okay, in Gilmore, that's a divorce case where the taxpayer wanted to deduct attorney's fees in his divorce because he wanted to protect his income-producing assets. And the court said, no, a divorce is personal in nature. You can't deduct your attorney's fees in a divorce. Education's personal, right? Right, right. But if you look in the divorce area, just three months after Gilmore, 1993, the tax court in Elliott said, and all courts since then have said, you can deduct attorney's fees if you're fighting to get alimony, which is taxable income. And that's accepted law. So you can deduct attorney's fees in a divorce, but after, post-divorce, you're fighting to get alimony from the ex-spouse, you can deduct those attorney's fees because the alimony is taxable income. Same situation here. After he gets the scholarship, he then decides which job opportunity is better. First, to have the sole practice option over here, or I have this other job in Germantown. He says, I can make more money in Germantown. I'm going to pay this off to get out of this thing. The obligation. I don't really follow the alimony analogy there. I mean, you know, he gets a bunch of money to pay for his education. Apparently he didn't pay taxes on that money. It's to pay for his education. Everybody else is paying for their education with post-tax dollars. And I know he had to pay more back, but, I mean, he signed the agreement he signed. And if one sets aside that he had to pay more back, fact. I mean, he's basically looking to pay his tuition with pre-tax dollars at the end of the day here. Okay, the origin of the Gilmore payment was a divorce. The origin of the Dargy payment was a breach of contract. No, it was he wanted to get educated. That's the origin. Origin is the beginning, right? The contract was signed in 1994 to get the education expenses and to get a job he hoped. But the job didn't happen. The job he thought. That's the origin, right? When he's at UT, in medical school, and he wants to get educated and needs some help with his tuition. In terms of time, that's the origin, the earliest point that is true. The payment that caused the issue here was made later. When the business decision was made, what to do? What's your best case in favor of your position here? Just the very best case with the Supreme Court or something else, or is there a case? Stroud and Keene, which the government cites, we think were misdecided. Stroud, the government's brief, cites Stroud. First, Stroud and Keene pertain to National Health Service Corp. obligations. A statutory in Section 117, it mentions NHSC. They are a separate animal. That's not the same kind of contract. The situation is very similar, though. Similar. Yeah, it's very similar. You get this money and you serve this underserved area, right? Right. In our case, Dargie case, we have a contract, a liquidated damages contract. In the National Health Service's cases, Stroud and Keene, they have a statutory obligation separate from any contract. But what's your best case? What are the good cases for the other side that are no good? What's your best decision? We have no best decision. I can't cite you a case on all fours with our case. I mean, I'm sympathetic to your situation, but the courts don't seem to buy what your position is. If you look back at 265, the reason behind that, it was to keep people from incurring an expense to produce tax-exempt income, like borrowing money to buy tax-exempt bonds and deducting the interest on the loan and not paying income tax on the interest. See, that's a classic situation. This is not that situation. The cost was the damages payment in 2002, not the scholarship in 1994. But the difference, at least the difference, should be deductible. Equitably, there's no reason not to allow that deduction. 265, the regulations under that address partial, you know, you allocate between the tax-exempt income and the taxable income. Okay, here you've got the earnings in Germantown as taxable income, and you've got the scholarship as tax-exempt income earlier. So at least it should be prorated under the regulations. Okay, thank you. Ms. Bradley? Good afternoon, Your Honors. May it please the Court. I think Judge Kethledge this morning, I think you've kind of hit the nail on the head here. What's before the Court is actually a fairly narrow issue. The appellants have conceded there's no issue of material fact. They've admitted that they had the burden of proving their entitlement to this deduction below. They've conceded that educational expenses are generally non-deductible, and here the case law, Keene, Taubman, and I believe the Weiler case cited in our brief, clearly all hold that when you get an educational degree to meet the minimum educational requirements for a specific trade or business, here a medical degree, it's been this case with a law degree, that those are non-deductible personal expenses. I just would like to get to appellants' point that they continue to insist that they made a damages payment. I think the record here is pretty clear that his reason for entering into the agreement in 1994 was to pay for his medical school education. I think that's consistent with his deposition testimony, answers to interrogatories, and, in fact, the record further shows that when he paid that loan back, the notation on the check to repay the university indicated it was a loan. The receipt indicated a loan. While, in fact, the agreement here did have a liquidated damages provision, appellant clearly was under the belief that from the earlier conditional agreement that they had negotiated that out. Here, everything is consistent with Mr. Dargy's understanding that they were paying back the principal of the loan, which was $73,000, and then the difference between that and the $121,000 is interest on that from the time he received that amount to the time he repaid it in 2002. So you're willing to concede that much, that that's what it was? That's what he looked at it as? He looked at it as principal and interest. That's consistent. So, again, while the agreement did have a liquidated damages provision here, he never understood at any point in time that he was going to be obligated for that. He agreed. Everything clearly indicates, with his own answers to interrogatories and depositions, that he was paying the principal, which was the $73,000, and then that $48,000-and-some-odd was interest on that from the time he received the loan until he repaid it in 2002. So based upon that, the district court here, Magistrate Judge Vescovo, determined that the taxpayers weren't entitled to a business expense deduction under 162 when they repaid the amount in 2002 because the origin of their claim, and we submit the Gilmour's test, which they conceded is the operable test here, the question is when Mr. Dargy received the money is the key question, not what his potential motives were when he repaid it. So we submit that the district court here appropriately granted summary judgment to the government on that point. And in the alternative, just to address the 265 argument, 265 bars taxpayers, even if they're entitled to a deduction, from taking money tax-free and then getting a deduction. The point is that you can't have your cake and eat it too. So while the district court judge found that that issue was moot because they weren't entitled to a business expense deduction for the educational expenses, the district court, out of thoroughness, said that 265 would have barred it. I think that... It says it's a different kind of a situation there. It's got a statutory origin. It's a service to the people of some other area. I think Appellant's attempt to distinguish the district court's decision in Stroud, which did involve an agreement to fund a medical education with U.S. funds. I believe it was the Department of HHS. It really is a distinction without a difference. I mean, the fact of the matter is the statute's very clear, and the holding in Stroud just didn't even get to whether it was a statutory obligation or contractual. That's kind of like a subsidiary little discussion going throughout. The court just held that because, like here, the taxpayer received the money tax-free, they weren't able to establish that they paid taxes. It would typically be tax-free when they receive it as a scholarship under Section 117 of the Code. So when they repaid it, they simply can't deduct it. So we think that both the decision in Keene addressing minimum educational requirement expenses to being non-deductible personal expenses, as well as the decision in Stroud addressing the second component here with 265 barred their deduction, and we would ask this court to affirm the judgment of the district court, please. Very well. Thank you. Thank you very much. We'll hear from Mr. Buckner at the bottom. Okay. Dr. Dargy is a physician, not a lawyer. He had no legal counsel when all this went down in 94 or 2002. If he had, he'd have done things differently. The fact that he called it a repayment, a repayment of what? Of liquidated damages. I think UT treated it like a note for their bookkeeping purposes, so he might have said note too, indebtedness. But really the fact is the contract itself governs what happens. The note provision doesn't apply to Dargy. The failure to provide the services for four years applies to Dargy. His payment was in liquidated damages under the contract. The four corners of the contract say that. As far as the partial deductibility, 265, under 265 the regulations, the IRS own regulations, provide that you allocate the expense to the tax-exempt income and the taxable income. Okay? So it permits an allocation of the deduction. What could be more direct than the $73,000 he repaid, what they advanced for him? The excess over that, whether it's $10,000 or $40,000 would be deductible, where he could earn more money in Germantown than in Murfreesboro. He paid that as a business reason for doing that. He was afraid he would get sued and he didn't have the money to hire lawyers and fight him over this and might be an injunction, keep him from practicing medicine someplace. Who knows? He was just a layman physician trying to decide what's best for him, his wife, and two children, so he paid. He's the second poor plaintiff we've had today. There's a lot of them out there, Your Honor. They have lawyers, the ones that have little, a small amount of money have lawyers. That's all I have, Your Honor. All right, very well. Thank you both. Case to be submitted. Clerk may adjourn court. This honorable court is now adjourned.